IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carbon Lehigh Intermediate Unit #21, :
                     Petitioner           :
                                           :
       v.                            : No. 750 C.D. 2021
                                           : ARGUED: December 13, 2021
Kimberly Waardal (Workers'       :
Compensation Appeal Board),     :
                     Respondent      :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY JUDGE CEISLER         FILED: January 3, 2022

Carbon Lehigh Intermediate Unit # 21 (Employer) petitions this Court for review of the July 6, 2021 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) who denied Employer a credit against its payment of workers' compensation benefits for Federal Pandemic Unemployment Compensation (Pandemic Compensation) benefits Kimberly Waardal (Claimant) received pursuant to Section 2104(b)(1) of the Coronavirus Aid, Relief, and Economic Security (CARES) Act, 15 U.S.C. § 9023(b)(1).[1] The sole issue raised on appeal is whether Pandemic Compensation under the CARES Act constitutes unemployment compensation (UC) for which an

---

[1] Section 2104 of the CARES Act pertinently provided that any state could enter into an agreement with the United States Secretary of Labor (Labor Secretary) for the payment of Pandemic Compensation in the amount of $600 per week.

employer may receive credit towards its payment of workers' compensation under Section 204(a) of the Workers' Compensation Act (Act).[2]  After review, we affirm.

## I.  Background

Enacted on March 27, 2020, the CARES Act provided financial assistance to individuals affected by the COVID-19 public health emergency declared by the United States Secretary of Health and Human Services on January 27, 2020.  Such individuals included those who were unable or unavailable to work due to closure of their "place of employment . . . as a direct result of the COVID-19 public health emergency[.]"[3]  Section 2104(b)(1) of the CARES Act provided that, upon execution of an agreement between a state and the Labor Secretary, individuals otherwise entitled to receive UC benefits would be paid "regular compensation" in the amount determined under state law, plus an additional amount for Pandemic Compensation.[4] Per Section 2104(b)(2) of the CARES Act, Pandemic Compensation could be made payable at the same time as, or separately from, any payment of "regular compensation."[5]  Individuals not otherwise eligible for "regular compensation," such as those who were self-employed, could receive Pandemic Unemployment

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a). Section 204(a) of the Act relevantly provides that the amount of UC benefits received by an injured employee "shall be credited against" any award of workers' compensation benefits.

[3] Section 2102(a)(3)(A)(ii)(I)(jj) of the CARES Act, 15 U.S.C. § 9021(a)(3)(A)(ii)(I)(jj).

[4] For weeks of unemployment ending on or before July 31, 2020, eligible individuals could receive $600 weekly Pandemic Compensation.  15 U.S.C. § 9023(b)(3)(A)(i).  This amount was reduced to $300 weekly for weeks of unemployment beginning after December 26, 2020, and ending on or before September 6, 2021.  15 U.S.C. § 9023(b)(3)(A)(ii).

[5] 15 U.S.C. § 9023(b)(2).

Assistance under Section 2102 of the CARES Act, the total amount of which included the Pandemic Compensation provided for in Section 2104(b)(3) of the CARES Act. States are entitled to reimbursement by the federal government for Pandemic Unemployment Assistance paid to eligible individuals under Section 2102 of the CARES Act and for the "total amount of [Pandemic Compensation]" paid, plus administrative costs.[6]

In the instant matter, the parties have not disputed the underlying facts. On May 19, 2017, Claimant suffered a work-related injury during the course and scope of her employment as a substitute teacher, for which Employer accepted liability through issuance of a notice of compensation payable. Certified Record (C.R.), Item No. 11, WCJ Decision, Finding of Fact (F.F.) Nos. 1, 3. At the time of her injury, Claimant was concurrently employed as an in-home care attendant. F.F. No. 2. After a period of total disability, Claimant returned to her pre-injury job for Employer, with restrictions. F.F. No. 9. Claimant's restrictions prevented her from returning to her concurrent position as an in-home care attendant. *Id.* On February 25, 2020, Employer filed petitions to modify and suspend Claimant's benefits on the basis that she had returned to work. C.R., Item Nos. 2-3.

After Claimant was laid off from her substitute teaching position on March 13, 2020, she filed a petition seeking reinstatement of her total disability benefits. *Id.*, Item No. 7. Thereafter, she began collecting weekly UC benefits, as well as the additional Pandemic Compensation made available under Section 2104(b)(1)(B) of the CARES Act. WCJ Decision, F.F. No. 11. In its response to Claimant's reinstatement petition, Employer sought a credit for benefits it paid to Claimant, or

---

[6] *See* 15 U.S.C. §§ 9021(f)(2)(A), 9023(d)(1)(A).

paid on Claimant's behalf, to the extent permitted under the Act.[7] C.R., Item No. 9. In a September 1, 2020 decision, the WCJ granted Claimant's reinstatement petition, as she was unable to return to her concurrent employment due to her continued disability and she was laid off from her position with Employer through no fault of her own. WCJ Decision at 5. While the WCJ agreed Employer was due a credit for the UC benefits Claimant received, the WCJ disagreed that Employer was entitled to a similar offset for the Pandemic Compensation she received under the CARES Act. *Id.* The WCJ noted that the $600 weekly Pandemic Compensation was unrelated to the amount of a recipient's wages. *Id.* Furthermore, as Pandemic Compensation was intended to act as a "general economic stimulus in response to the [COVID-19] pandemic," the WCJ felt that converting those funds into a credit for Employer would "largely defeat the purpose of the CARES Act." *Id.* The WCJ directed that Employer resume its payment of total disability benefits upon exhaustion of its credit for Claimant's UC benefits.

Employer appealed to the Board solely on the issue of its entitlement to a credit for Claimant's receipt of Pandemic Compensation under the CARES Act. C.R., Item No. 12. Claimant appealed the WCJ's decision on the basis that, despite having succeeded in her reinstatement petition, the WCJ failed to award litigation costs.[8] *Id.*, Item No. 14. In an April 15, 2021 decision, the Board remanded the matter to the WCJ on the issue of costs but affirmed the WCJ in all other respects. *Id.*, Item No. 16, Board Decision at 9. Citing this Court's decision in *Dietrich*

---

[7] Employer also sought supersedeas, which the WCJ granted in a May 13, 2020 interlocutory decision because the amount of Claimant's UC benefits exceeded the amount of total disability benefits due. C.R., Item Nos. 9-10.

[8] Section 440(a) of the Act, added by the Act of February 8, 1972, P.L. 25, provides that a successful claimant shall be awarded a reasonable sum for costs. 77 P.S. § 996(a).

*Industries, Inc. v. Workers' Compensation Appeal Board (Shank)*, 725 A.2d 252 (Pa. Cmwlth. 1999), in which we disallowed a credit under Section 204(a) for federally funded trade readjustment allowance (TRA) benefits a claimant received under the Trade Act of 1974 (Trade Act),[9] the Board agreed that Employer was not entitled to a credit for Claimant's federally funded Pandemic Compensation. Board Decision at 4-6. One member of the Board dissented, opining that Pandemic Compensation was a UC benefit subject to a credit under the plain language of Section 204(a) of the Act. *Id.* at 9.

Following remand,[10] the WCJ issued a second decision in which he noted that the parties had resolved the sole issue regarding litigation costs and that "[t]he immediate appeal to the Commonwealth Court concerning" Employer's right to a credit for Claimant's Pandemic Compensation "would materially advance the litigation." C.R., Item No. 18. Employer appealed to the Board, reiterating its prior contention that the WCJ erred in failing to give Employer a credit in the amount of Claimant's Pandemic Compensation. *Id.*, Item No. 19. The Board affirmed the WCJ and made final its prior order dated April 15, 2021. *Id.*, Item No. 21. This appeal followed.[11]

---

[9] 19 U.S.C. §§ 2101 - 2497b. Pertinently, the Trade Act established a program to assist American workers adversely affected by an increase in imports.

[10] A May 7, 2021 petition for review filed by Employer in response to the Board's April 15, 2021 remand order was quashed by this Court on the basis that the April 15, 2021 order was interlocutory and not immediately appealable. *See Carbon Lehigh Intermediate Unit # 21 v. Waardal (Workers' Comp. Appeal Bd.)* (Pa. Cmwlth., No. 488 C.D. 2021, filed July 6, 2021).

[11] Our review of workers' compensation matters is limited to determining whether a constitutional violation or error of law has occurred and whether findings of fact are supported by substantial evidence. *Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialties)*, 99 A.3d
**(Footnote continued on next page…)**

5

The sole issue before this Court is whether Pandemic Compensation under the CARES Act is equivalent to UC benefits for which Employer is entitled to a credit under Section 204(a) of the Act.

## II. Discussion

Section 204(a) of the Act provides that, where an employee receiving workers' compensation benefits is also receiving UC benefits, the employer paying workers' compensation benefits is entitled to a credit in the amount of UC benefits received. 77 P.S. § 71(a). Section 204(a) also entitles an employer to a credit for 50% of a claimant's "old age" Social Security benefits[12] and for severance and pension payments made to a claimant, to the extent such payments are funded by the employer directly responsible for paying workers' compensation. *Id.*

In *Shank*, the precedent relied upon by the Board, the claimant, Glenn Shank (Shank) received sickness and accident benefits following a lower back injury he sustained during the course and scope of his employment, along with UC benefits and TRA benefits, which "were intended to supplement state unemployment insurance benefits." *Shank*, 725 A.2d at 253. Shank's receipt of TRA benefits was subject to various statutory requirements, including exhaustion of his entitlement to "unemployment insurance benefits."[13] *Id.* Shank and his employer reached an agreement for the payment of workers' compensation on January 21, 1997, after which Shank's employer sought a credit against its workers' compensation

---

397, 405-06 (Pa. 2014). When the issue under review is a question of law, our standard of review is *de novo*, and our scope of review is plenary. *Id.*

[12] *See* 42 U.S.C. § 402. The employer's credit does not apply to old age Social Security benefits paid prior to the compensable injury. 77 P.S. § 71(a).

[13] *See* 19 U.S.C. § 2291(a)(3)(b).

6

obligation in the amount of Shank's UC and TRA benefits. A WCJ granted the credit for Shank's sickness and accident and UC benefits but disallowed a credit for his TRA benefits. Shank's employer appealed to the Board, which affirmed the WCJ.

In analyzing the employer's right to a credit under Section 204(a), we recognized that TRA benefits, which were intended to supplement UC benefits, were funded entirely by the federal government, as was the cost of administering the TRA program. Shank's employer argued that the funding source for Shank's TRA benefits was irrelevant, as Section 204(a) made no such distinction when mandating a credit for a claimant's receipt of UC benefits. We disagreed, noting that an employer's credit against its obligation to pay workers' compensation stems from its payment of "regular stated amounts, **out of its own general funds** or from sick or accident benefits," which do not constitute "wages or salary for work performed, but [which are paid] in relief of the employee's incapacity to work." *Id.* at 254 (emphasis in original) (internal citations omitted). Further, we noted that TRA benefits were not among the types of payments delineated in Section 204(a) from which an employer could seek a credit towards its workers' compensation obligation, and we recognized that, where certain items are specifically designated in a statute, omissions are understood to be excluded. Having concluded that TRA benefits were "distinct from the type of benefits contemplated" under Section 204(a) of the Act, we affirmed the Board. *Id.*

Instantly, in support of its right to a credit for Claimant's receipt of Pandemic Compensation, Employer essentially resurrects the argument we rejected in *Shank* – that Section 204(a) makes no distinction as to the funding source of a claimant's UC benefits. Employer suggests that this omission stems from the fact that UC benefits

7

are funded by multiple employers and, therefore, such benefits do not come from one specific employer, but rather from a larger pool of funds. Employer suggests that one could "theoretically" calculate the precise proportion of an employee's UC benefits that are attributable to her employer's contributions. Employer Br. at 19. The General Assembly chose not to require such a calculation, however, and instead rendered any benefits designated as "unemployment compensation" subject to the credit provisions in Section 204(a). Employer distinguishes our holding in *Shank* on the basis that the TRA benefits considered in *Shank* were subject to different criteria, including the exhaustion of unemployment insurance benefits.

Employer also relies on *Costa v. Workers' Compensation Appeal Board (Carlisle Corp.)*, 958 A.2d 596 (Pa. Cmwlth. 2008), which concerned whether a claimant's workers' compensation award must be reduced by the amount of his UC benefits, regardless of whether his employer had requested such an offset. Employer's reliance on *Costa* largely stems from a footnote, in which we stated that an employer was not required to prove which portion of a claimant's UC was funded by the employer, "as opposed to employees through their payroll taxes or the federal government." *Id.* at 601 n.7. The footnote also recognized the difference between an employer's right to a credit for the total amount of UC paid to a claimant and its right to a credit for a claimant's receipt of pension benefits, the latter of which is limited to the amount of pension benefits that were funded by the employer. *Id.* While instructive, the *Costa* footnote merely recognizes that an employer may only seek a pension credit to the extent it funded the pension. It does not stand for the proposition that Employer has an unfettered right to a credit for Claimant's receipt of Pandemic Compensation.

8

We are similarly unpersuaded by Employer's attempts to distinguish this matter from our holding in *Shank*. It is noteworthy that Pandemic Compensation is available to individuals who are not otherwise eligible to receive "regular" UC benefits, and the CARES Act provides for federal reimbursement of the amounts paid by a state for Pandemic Compensation. Furthermore, Pandemic Compensation is referenced separately from "regular compensation" throughout the relevant provisions of the CARES Act. These distinctions render Pandemic Compensation sufficiently "distinct from the type of benefits contemplated" under Section 204(a) of the Act. *Shank*, 725 A.2d at 254. We recognize that Section 204(a), which was last amended in 1996, did not contemplate the benefits at issue here. It is clear, however, that the General Assembly has not seen fit to amend Section 204(a) in the two decades following our decision in *Shank* to specify that the credit provisions of Section 204(a) of the Act encompass the types of federally funded benefits at issue in *Shank* and the instant matter.

Ultimately, the legislative intent behind Section 204(a) is to prevent an employer from having to pay **"duplicate benefits for the same loss of earnings[.]"** (emphasis added) (internal citations omitted). *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Bascovsky)*, 977 A.2d 61, 67 (Pa. Cmwlth. 2009). Disallowing a credit for Pandemic Compensation that is wholly paid for by another entity does no disservice to the overall purpose of Section 204(a), nor does it place Employer in the position of "paying duplicate benefits for the same loss of earnings." Indeed, a contrary decision would result in disparate treatment between two distinct groups of unemployed individuals – those who are permitted to collect Pandemic Compensation by virtue of having lost their jobs, and those who may not because they are burdened with an injury in addition to unemployment.

9

For these reasons, we affirm the Board.


_____
ELLEN CEISLER, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carbon Lehigh Intermediate Unit #21, :
                 Petitioner        :
                                  :
       v.                 : No. 750 C.D. 2021
                                    :
Kimberly Waardal (Workers' :
Compensation Appeal Board), :
                 Respondent    :

# **O R D E R**

AND NOW, this 3rd day of January 2022, the July 6, 2021 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge